**In re PRUDENCE–BONDS CORP.**

**In re STATE STREET TRUST CO.**

No. 26545.

United States District Court
E. D. New York.

Feb. 14, 1951.

Peabody, Arnold, Batchelder & Luther, Boston, Mass. (Willard B. Luther and John S. Whipple, Boston, Mass., of counsel), for State Street Trust Co., as trustee of Prudence-Bonds, Tenth Series, under Trust Agreement dated May 1, 1927.

Milbank, Tweed, Hope & Hadley, New York City (William E. Jackson, A. Donald MacKinnon, New York City, of counsel), for State Street Trust Co. as Trustee, etc.

George C. Wildermuth, Brooklyn, N. Y., for trustee of debtor.

Charles M. McCarty, New York City, for Prudence-Bonds Corp. (New Corporation).

James F. Dealy, New York City, for Reconstruction Finance Corp.

Samuel Silbiger, Brooklyn, N. Y., for George E. Eddy, bondholder.

Nemerov & Shapiro, New York City, (Aaron Schwartz, New York City, of counsel), for Rosalie Samson, bondholder.

INCH, Chief Judge.

These two motions are made pursuant to Rule 53(e)(2) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and involve a review of the Report of Special Master Moore, dated November 24, 1950, on the objections to the account of State Street Trust Company, as Trustee of Prudence Bonds, Tenth Series. One motion is by Prudence-Bonds Corporation (New Corporation) and the Trustee of the Debtor for an order taking action upon the Master's Report and the objections filed thereto. The other motion is by the State Street Trust Company, as Trustee, Accountant for an order (a) sustaining its objections to the Report, (b) overruling the objections made to the Report by the Objectors to the Account, (c) setting aside the Report and (d) for other and further relief.

The Account of the State Street Trust Company, hereinafter called the "Bank", covered its acts as Trustee from the inception of the Trust to on or about May 23, 1938. To this Account three separate objections were filed jointly by Prudence-Bonds Corporation (New Corporation) and the Trustee of the Debtor, and the objections were also adopted by bondholders represented by Samuel Silbiger, Esq. and Nemerov & Shapiro, Esqs.

The objections to the Account of the Bank were tried before the Special Master, and the proof taken at the hearings consisted mainly of documentary evidence. A large number of exhibits and two voluminous stipulations of fact were received in evidence. Exhaustive briefs were presented to the Special Master, together with numerous proposed findings of fact and conclusions of law. Thereafter the Special Master filed a thorough and comprehensive report comprising 107 printed pages and containing 283 separate findings of fact and 19 conclusions of law. The Report clearly indicates that the experienced and capable Special Master has performed his work most diligently, and that he has given thorough, careful and painstaking consideration to the many complicated matters presented.

Many of the pertinent facts need not be recited here since they are fully set forth in the Special Master's report.

■ The first objection to the Bank's Account involved the alleged liability of the Bank in permitting four releases of cash, totalling $17,500, between November 26, 1930 and November 27, 1931, while mortgage collateral was in default in the payment of principal. The Special Master has found that these releases of cash did not violate the terms of the Trust Agreement, and he has recommended that the first objection be overruled and the credits claimed by the Bank for the surrenders objected to be allowed. I agree with this recommendation, and accordingly confirm the Special Master's report with respect to the dismissal of the first objection.

The second objection alleged that in connection with the partial foreclosure of the so-called Dresner-Westchester Corporation mortgage, $25,000 of collateral was improperly withdrawn from the Trust Fund. The Special Master has recommended that the second objection be sustained in part and that the Bank be surcharged $22,375, computed as follows: $6,250 paid upon the sale of the premises after foreclosure of the mortgage, $10,375 eventually paid on account of a second mortgage received on the sale, and a further collection of $5,750 made upon the second mortgage after the bankruptcy of Prudence Company, Inc., hereinafter called the "Guarantor". As to the item of $5,750 the Special Master concluded that it should have been the subject of a reclamation proceeding in the Guarantor's bankruptcy proceeding, or that the Bank should have filed a claim therefor in the Guarantor's bankruptcy proceeding based on the Guarantor's guarantee of the underlying collateral in the Trust Fund. In my judgment the recommendation of the Special Master to sustain in part the second objection is correct, except as to the item of $5,750, for reasons which I shall discuss below in connection with the third objection.

■ The third objection involved the alleged nonfeasance of the Bank in failing to take action to enforce the guarantee by the Prudence Company, Inc., of the payment of principal and interest of the underlying collateral in the Trust Fund. It was the contention of the objectors to the Account of the Bank that there were two important situations during the administration of its trust which required action by the Bank with respect to the guarantee of the underlying collateral and that the Bank's nonfeasance in this regard resulted in substantial loss to the Trust Fund for which it should be surcharged in this accounting proceeding. These situations concerned the default of the so-called "Hotel Guyon mortgage" and the bankruptcy proceedings of the Guarantor.

The collateral deposited in the Trust Fund consisted of three bonds and mortgages of an aggregate principal amount of $1,115,000 and $5,000 principal amount of State of Missouri bonds. The largest of the three mortgages was that on the Hotel

Guyon located in Chicago, Illinois. The material facts with respect to that mortgage, as correctly found by the Master, were briefly as follows: on November 1, 1927, J. Louis Guyon and Lillian Guyon, his wife, executed their promissory note in the principal sum of $1,000,000 payable to bearer in annual installments beginning on May 1, 1929. The note was secured by a deed of trust (hereinafter called "a mortgage"), to Frank Fox, Trustee, a first lien upon the premises in Chicago owned by the makers of the note. Prior to the deposit of the mortgage in the Trust Fund, the DeKalb Company, the then holder of the note, entered into a participation or ownership agreement with the Guarantor, whereby the Guarantor acquired a senior interest of $900,000 in the mortgage and the De-Kalb Company retained a junior interest therein to the extent of $100,000. Under the ownership agreement payments of principal were to be made as follows:

|  | Senior Interest | Junior Interest |
|---|---|---|
| May 1, 1929 |  | $33,000 |
| May 1, 1930 |  | $33,000 |
| May 1, 1931 | $25,000 | $19,000 |
| May 1, 1932 | $29,000 | $15,000 |
| May 1, 1933 | $44,000 |  |
| May 1, 1934 | $55,000 |  |
| May 1, 1935 | $55,000 |  |
| May 1, 1936 | $55,000 |  |
| May 1, 1937 | $637,000 |  |
|  | $900,000 | $100,000 |

The Guyon note and mortgage were deposited in the Trust Fund on July 26, 1928 subject to the said ownership agreement. Thus, the value of the Trust Fund's share of the Guyon mortgage was $900,000. (The junior share of $100,000 was subsequently assigned by the DeKalb Company to the Guarantor who later assigned it to a wholly owned subsidiary.)

The Guyon mortgage provided that the mortgagors should make deposits on the 28th day of each month in such amounts as to accumulate the necessary funds to meet interest and principal installments when due. The deposits were to be made with the Guarantor and not with the holder of the mortgage.

The Guyon mortgage fell into default in the payment of *principal* at all times from and after May 28, 1929 and in the payment of *interest* at all times from and after May 28, 1930.

Thereafter on May 5, 1932 the Guarantor caused a foreclosure action to be instituted, and ultimately on August 23, 1943 the premises were sold for the net sum of $408,-437.71 cash which was received by the Trust Fund. On the date of sale the arrears of principal and interest on the Trust Fund's share of the Guyon mortgage amounted to $1,570,862.15 computed as follows:

Principal .................. $900,000.00
Balance of interest due 2/28/32  51,062.15
Interest on $900,000 from
  3/1/32 to 8/23/43 @ 6%....  619,800.00

Total ............. $1,570,862.15

The surcharge recommended by the Special Master is the unpaid principal and interest on the mortgage ($1,570,862.15) less the net proceeds of the sale of the mortgaged premises ($408,437.71), or $1,162,-424.44, together with interest thereon at the rate of 3% per annum from August 23, 1943 to the date of the decree herein.

At the outset the Special Master was of the opinion that the Guyon note and mortgage, subject to the ownership agreement, was ineligible for deposit in the Trust Fund under the terms of the Trust Agreement (Article I, Section 1, pars. (b) and (c); Article III, Section 2, last paragraph), because the so-called senior interest of $900,000 deposited in the Trust Fund was "less than a co-ordinate interest" in the mortgage and was "completely vassalized" by the junior interest. However, the Special Master found that the Bank was exculpated from receiving the Guyon mortgage because it accepted it in good faith and in reliance on the opinion of counsel contained in a letter dated July 26, 1928. I agree with the conclusion of the Special Master that the Bank received the mortgage in good faith, and that it was protected by the opinion of its counsel in accepting it into the Trust Fund. However, in my

732

opinion, even if this were not so, the Bank may not, for reasons which I shall discuss below, be surcharged in this accounting proceeding for its acceptance of the Guyon mortgage.

The Special Master has recommended that this large surcharge be imposed on the Bank on the theory that the guarantee of the underlying collateral was an asset of the Trust Fund and that under the circumstances presented, i. e., having knowledge that the Guyon mortgage constituted 85% of the Trust Fund, and that it was in default for a substantial period of time, the Bank should have taken some action on the guarantee, and that by its failure to do so, it lost or surrendered a valuable asset of the Trust Fund. The Special Master further concluded that the Bank should have filed in the Guarantor's reorganization proceeding a claim based on the guarantee of the underlying collateral for the amounts not ultimately collected on the Guyon and other mortgages in the Trust Fund, and that its inaction in this regard also constituted a surrender of collateral.

After giving this matter serious consideration I am constrained to disagree with the Special Master's conclusions on this objection.

As the Court of Appeals again clearly pointed out in the Fifth and Ninth Series accountings: "The proceedings here, as we have said, are for the restoration of the trust fund, not for damages to the individual holders of bonds. The Bank must restore to the fund what was withdrawn from it through the Bank's misconduct. It is against the fund, as it will be when restoration has been made, that the bondholders will assert their claims for the unpaid principal of, and interest on, their bonds. If realization on assets now in the fund, plus the restoration by the Bank, leaves an excess, then of course the Bank will be entitled to the excess." President and Directors of Manhattan Co. v. Kelby, 2 Cir., 147 F.2d 465 at pp. 476–477.

In those proceedings the Court indicated that the guarantee of the underlying collateral was not a part of the Trust Fund, and the Court went on to hold that a cause of action against the Bank for damages resulting from its failure to enforce the Guarantor's *covenant* to deposit the guarantee of underlying collateral was not one for the restoration of the Fund and could not be maintained in the bankruptcy proceedings. The Court said, 147 F.2d at page 478:

"Appellees also suggest that the Bank improperly authenticated the Corporation's bonds because, before authentication, there was not in its possession the guarantee of (a), (b), and (c) collateral in the trust fund. But neither Article I, § 1, which describes the required contents of the trust fund, nor the associated Article I, § 2, which describes the instruments which must accompany mortgage collateral, refers to that guarantee.

"Appellees also urge that the Bank is liable for damages resulting from its failure to enforce the Corporation's covenant to deposit that guarantee. It may be that such damages were considerable; for, had that guarantee been procured promptly, the guarantor might have made good the defaulted mortgages when it was still amply solvent. But, assuming arguendo, that the exculpatory clauses would not be a defense, yet an action for those damages is not one for restoration of the fund; it therefore comes within the rule of Smith v. Continental Bank & Trust Co., supra; and it cannot be maintained in connection with the bankruptcy proceedings."

The Supreme Court denied certiorari in 324 U.S. 866, 65 S.Ct. 916, 89 L.Ed. 1422.

In my judgment that decision is controlling here. The Special Master has sought to distinguish the case as follows (Report p. 30): "But it seems to me that the issues in this accounting are quite different from those in The Manhattan Company case, supra. There, the Trustee had not received the required guarantee of the underlying collateral, and the objectors claimed, by reason thereof, that no bonds should have been authenticated and delivered; in short that no trust operations should ever have been undertaken. Here the Bank received the guarantee, which, in my view, became

part of the collateral, and which matured before the guarantee of the bonds, but the Bank failed to enforce it, and as a result, in effect, yielded it up to the Guarantor. If the guarantee of the underlying collateral was not capable of supporting a separate claim, it then and at all times was a meaningless instrument of gossamer quality. The bondholders could collect their indebtedness only once, but no avenue for attaining that objective should have been closed to them."

However, it seems to me what was so clearly stated in the Manhattan Company case, supra, cannot be held inapplicable here simply because in the present case the Bank actually received the guarantee. Whether there is inaction on the *covenant* to obtain the guarantee or upon the *guarantee* itself, the nature of the liability sought to be imposed upon the Bank is the same, namely, liability for a dereliction of duty in failing to pursue the rights under the guarantee and not for a loss, withdrawal or depletion of a part of the Trust Fund which should be restored. While it may be that the Bank in the instant case was guilty of a greater degree of negligence than the Bank in the Manhattan Company case because it failed to take action on a guarantee actually in its possession, and while 85% of the collateral was in default for a considerable period of time, those circumstances do not change the nature of the liability sought to be imposed on the Bank or the character of these proceedings, as plainly stated by the Court of Appeals in the Manhattan Company case.

The Special Master was in error in finding (No. 124) that the Trust Agreement and the bonds "expressly provided" that the guarantee of underlying collateral was to be part of the Trust Fund and (No. 125) that it was deposited with the Bank "as part" of the Trust Fund. The covenant to deposit the guarantee of underlying collateral with the Bank is contained in a separate Article comprising miscellaneous covenants of the Debtor. Article III, Section 1(f). As pointed out in the first paragraph above quoted from the Manhattan Company opinion, "neither Article I, § 1, which describes the required contents of the trust fund, nor the associated Article I, § 2, which describes the instruments which must accompany mortgage collateral, refers to that guarantee." Neither is the guarantee mentioned in Article I, Section 4 of the Trust Agreement which provides for the manner of determining and computing the aggregate principal amount of the Trust Fund, nor in Article I, Section 6 which provides for the substitution and withdrawal of securities and cash from the Trust Fund. The bonds themselves merely refer to the provisions of the Trust Agreement and make no reference to the guarantee of the underlying collateral. Thus it cannot be said that the bonds or the Trust Agreement "expressly provided" that the guarantee of underlying collateral was to be part of the Trust Fund, and, in view of its omission from the above provisions of the Trust Agreement, such a conclusion may not be drawn by implication.

Moreover, even if the collateral guarantee were considered to be a part of the Trust Fund, the nature of the liability asserted against the Bank is not for the restoration of an asset, but rather for damages alleged to have resulted from the failure of the Bank to exercise rights under the guarantee.

It is for the same reasons that the surcharge based on the failure of the Bank to file a proof of claim in the Guarantor's reorganization proceeding for amounts not ultimately collected on the Guyon and other mortgages in the Trust Fund cannot be sustained. The guarantee was not part of the Trust Fund, and a cause of action based on the Bank's failure to file a proof of claim thereon is one for a dereliction of duty in failing to take advantage of all the rights under the guarantee and not for a restoration of part of the Trust Fund. Accordingly, the third objection must be dismissed from this accounting proceeding.

The Bank contends that even if it were assumed that the guarantee were part of the Trust Fund and that a cause of action against the Bank for failing to act diligently thereon could be entertained in this accounting proceeding, the Special Master's recommended surcharge on the third objection is based on numerous errors of fact

**734**

and law. For example, it is contended that the Bank could not have accelerated the Guyon mortgage until there was a breach of the guarantee on the *bonds,* which did not take place until after May 1, 1933 when action on the guarantee was precluded by Banking Regulation No. 1 of New York State; that because of the express limitations of the Trust Agreement the Bank had no right or duty to enforce the collateral guarantee; that the collateral guarantee was unauthorized by the Guarantor corporation and hence unenforceable; that the evidence does not show that the Guarantor was financially able to respond on the collateral guarantee and that the Bank cannot be held liable for failing to file a proof of claim in the Guarantor's bankruptcy proceeding because the claim could not have been properly allowed. While some of these contentions may raise further obstacles to the imposition of the recommended surcharge on the Bank, it becomes unnecessary to discuss them in view of the conclusion which I have reached above.

The following Findings of Fact and Conclusions of Law of the Special Master are *accepted and adopted* (all numbers are inclusive): Findings of Fact numbered 1–57, 61, 71–2, 74–106; 111–123, 127–130, 132, 134–137, 146, 148–151, 155, 157–175, 198, 201–212, 216, 218–235, 261–266, 277, 282 and 283, and Conclusions of Law numbered 1, 4, 5, and 13.

The following Findings of Fact and Conclusions of Law of the Special Master are *rejected:* Findings of Fact numbered 124, 125, 153, 154, 213, 214 and 215, and Conclusions of Law numbered 2 and 19.

All other Findings of Fact and Conclusions of Law made by the Special Master are not necessary to my decision, and I do not pass upon them.

On consent of the parties Findings of Fact numbered 107 and 108 are *modified* to read as follows:

107. On December 19, 1931, B & M 10–747 in the unpaid principal amount of $900,000 was in default in the payment of principal.

108. On December 19, 1931 the collateral in the Trust Fund not in default in the payment of principal totaled in principal amount the sum of $127,500 and there were outstanding $1,052,500 principal amount of Tenth Series bonds.

In addition, I make the following findings and conclusions:

### Findings of Fact

"284. The Trust Agreement and the bonds did not provide that the guarantee of the Prudence Company, Inc. provided for by Article III, Section 1(f), of the Trust Agreement was to be a part of the Trust Fund.

"285. The guarantee of the mortgage collateral was duly received by the Bank in connection with the Trust Fund, on or about July 26, 1928, together with various documents relating to B & M 10–747, the Hotel Guyon note and trust deed, but it was not deposited as a *part* of the Trust Fund.

"286. On the facts presented, the Bank, while it may have failed to pursue all the rights under the collateral guarantee, did not by such inaction withdraw or surrender a valuable asset of the Trust Fund.

"287. The Bank's failure to file a proof of claim in the proceeding for reorganization of the Prudence Company, Inc. based upon the guarantee of the mortgage collateral was not tantamount to the surrender of a part of the Trust Fund."

### Conclusions of Law

Conclusion of Law numbered 2 is modified to read as follows:

2. The objection numbered "Second" should be sustained in part and the Bank surcharged with the sum of $16,625 with interest on the sum of $6,250 at the rate of three percentum (3%) per annum from April 7, 1932 to the date of the decree herein, and on the sum of $10,375 at said rate from June 30, 1933 to the date of the decree herein, less the sum of $3,239.58.

In addition the following Conclusions of Law are made:

"20. The objection numbered 'Third' should be overruled and dismissed.

"21. Upon full payment of the foregoing surcharge imposed under objection numbered 'Second' the Bank is entitled to a decree settling its account verified August 30, 1938, and filed herein and discharging if from all matters embraced in said account."

Settle order.